Filed 9/30/20  P. v. Williams CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B295130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA097591-01) |
| v. | |
| LAVALE CURTIS WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Amy N. Carter, Judge.  Affirmed as modified.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Lavale Williams appeals from a judgment which sentences him to 18 years in state prison for assaulting his father, Curtis Williams, with a deadly weapon. He contends the trial court abused its discretion when it denied his motion for pretrial mental health diversion pursuant to Penal Code section 1001.35.[1] He also challenges a $500 domestic violence fine imposed pursuant to section 1203.097, subdivision (a)(5). We strike the $500 fine, which may only be imposed on those persons who are granted probation. We otherwise affirm the judgment.

## FACTS

On January 28, 2018, at approximately 11:00 a.m., Williams entered his father's home. Curtis[2] was watching television in the den and heard Williams speak with individuals working in the kitchen. When Williams entered the den, he appeared upset. He held a box cutter with the blade extended. Because Curtis was seated on the couch and Williams was standing, the box cutter was level with Curtis's face and approximately one foot away from it. This frightened Curtis.

Curtis ran out of the house to a nearby liquor store. He asked the store employee to call the police. Williams entered the store shortly after his father did and cornered him in an aisle. They struggled for the weapon. Curtis flipped Williams onto his back and a bystander stepped on his hand, causing Williams to lose his grip on the boxcutter.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] For ease of reference, we refer to Williams's father by his first name with no disrespect intended.

An amended information charged Williams with one count of assault with a deadly weapon. (§ 245, subd. (a)(1).) It also alleged Williams had suffered three prior serious or violent felonies (§ 667, subds. (a)(1) & (d)) and that two of the felonies were prison priors (§ 667.5, subd. (b)).

Before trial, Williams moved for mental health diversion pursuant to section 1001.35. The trial court denied his motion. After a lengthy recitation of Williams's mental health history, the court indicated it was not convinced Williams suffered from a mental disorder or that it played a significant role in the commission of the charged offense. Instead, the court found Williams committed the offense due to his personal animus and anger toward his father. The court also noted Williams's "relentless" criminal history and found he would pose an unreasonable risk of danger if he were treated in the community.

The matter proceeded to a jury trial and Williams was convicted of assault with a deadly weapon. (§ 245, subd. (a)(1).) He admitted he suffered three prior serious or violent felony convictions.[3] The trial court sentenced Williams to 18 years in state prison, consisting of the upper term of four years, doubled to eight years for the two prior strikes, plus two consecutive five-year terms pursuant to section 667, subdivision (a). The trial court imposed various fines and fees, including a domestic violence fund fee of $500 pursuant to section 1203.097. Williams timely appealed.

---

[3] Upon the People's motion, two of those prior convictions were stricken pursuant to section 667, subdivision (d), and one of the prior convictions was stricken pursuant to section 667, subdivision (a).

**DISCUSSION**

**I.  The Trial Court Properly Denied Pretrial Mental Health Diversion**

Williams contends the trial court abused its discretion when it denied his motion for mental health diversion. We disagree.

**A.  Applicable Law**

Section 1001.36 authorizes a mental health diversion program for defendants with qualifying mental disorders which postpones "prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).)

A trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder, such as schizophrenia, bipolar disorder, and posttraumatic stress disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1)–(6).)  The Penal Code defines an "unreasonable risk of danger to public safety" to be an unreasonable risk that the petitioner will commit a new violent felony under section 667, subdivision (e)(2)(C)(iv).[4]  (§§ 1001.36,

---

[4]     Section 667, subdivision (e)(2)(C)(iv) sets forth a list of "super strikes."  (*People v. Johnson* (2015) 61 Cal.4th 674, 682.)

subd. (b)(6), 1170.8, subd. (c).)  Further, defendants charged with certain crimes, such as murder and rape, are ineligible for diversion.  (§ 1001.36, subd. (b)(2).)

If the defendant meets the above eligibility requirements and the trial court is satisfied the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, the court may grant pretrial diversion.  (§ 1001.36, subds. (a), (b)(3), & (c)(1).)  The maximum period of diversion is two years.  (*Id.*, subd. (c)(3).)  If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings.  (*Id.*, subd. (d).)  "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion" and "the arrest upon which the diversion was based shall be deemed never to have occurred."  (*Id.*, subd. (e).)

---

They are:  (1) a "sexually violent offense" as defined by Welfare and Institutions Code section 6600, subdivision (b); (2) oral copulation (§ 288a), sodomy (§ 286), or sexual penetration (§ 289) with a child who is under 14 and more than 10 years younger than the defendant; (3) a lewd or lascivious act involving a child under 14 (§ 288); (4) any homicide offense or attempt thereof (§§ 187–191.5); (5) solicitation to commit murder (§ 653f); (6) assault with a machine gun on a peace officer or firefighter (§ 245, subd. (d)); (7) possession of a weapon of mass destruction (§ 11418, subd. (a)(1)); and (8) any serious or violent felony punishable by death.  (§ 667, subd. (e)(2)(C)(iv).)

We review the trial court's decision regarding mental health diversion for an abuse of discretion. (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*) ["Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)"].)[5]

## B. Analysis

According to Williams, he meets all the eligibility requirements listed in section 1001.36. First, he was diagnosed with unspecified bipolar disorder and unspecified schizophrenia. Second, his confusion and upset demeanor at the time he assaulted his father were consistent with "the overriding psychoses and delusional behavior documented in [his] mental health evaluations." Thus, his mental disorders played a significant role in the commission of the offense. Third, he has responded well to mental health treatment as demonstrated by his mental health evaluations; he heard voices in February 2018, but appeared rational and cogent to the psychologist by

---

[5] The parties agree the abuse of discretion standard of review is appropriate in this case. While the *Frahs* court did not expressly decide the standard of review, it extensively discussed the trial court's discretion to order mental health diversion throughout its opinion. (*Frahs, supra,* 9 Cal.5th 618.) We therefore conclude the abuse of discretion standard of review is appropriately applied here. (See *People v. Jordan* (1986) 42 Cal.3d 308, 316 ["Where, as here, a discretionary power is . . . by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."].)

September 2018.  Additionally, Williams asserts he consents to diversion, waives his speedy trial right, and agrees to comply with treatment.  Finally, Williams claims his criminal history does not demonstrate a likelihood he will commit a "super strike" or pose an unreasonable risk of danger to public safety if treated in the community.

We conclude the trial court did not abuse its discretion.  The record supports the trial court's findings as to the first, second, and sixth requirements for pretrial diversion.

First, there is conflicting evidence in the record that Williams suffers from a qualifying mental disorder.  While he was diagnosed with unspecified bipolar disorder and unspecified schizophrenia, a June 9, 2018 report found "[n]o convincing evidence of Schizophrenia or Bipolar" disorders based on his mental health history.  A clinical psychologist reviewed Williams's extensive medical records and concluded they were "inconsistent regarding [Williams's] mental health symptoms.  He was described as having delusional thoughts, but there is no information regarding what those might be.  For the most part, he denied auditory or visual hallucinations and delusions.  Other notes indicate that he did hear voices . . . .  Although notes indicate that he 'presented with mood instability, AH [alternative hypothesis], delusions, difficulty getting along with peers, threats of hurting others and feeling unsafe[,]' he also denied hallucinations, mood swings or thoughts of self-harm."  The trial court specifically noted these inconsistencies in Williams's mental health records and could reasonably conclude that Williams did not suffer from a qualifying mental disorder.

Even if Williams suffered from a qualifying mental disorder, the trial court found he was motivated by his personal animus towards his father rather than any mental disorder during the assault. This finding is supported by Curtis's report to the responding officers that they argued about the family turning their back on Williams. Further, Williams stated he did not keep in touch with his siblings. Although he lived with some family members, "they never raised [him,]" and he lived in foster homes from the age of 10 until he was emancipated when he turned 18.

Finally, the trial court's conclusion that Williams posed an unreasonable risk of danger to the community is supported by his "relentless" criminal history and failure to reform. In 1999, a juvenile petition for robbery was sustained against him. From 2000 to 2003, he was convicted of six offenses involving drugs, theft, and criminal trespass. In 2004, he was twice convicted of battery. In 2005, he was convicted of theft and robbery, for which he was sentenced to two years in prison. From 2010 to 2014, he was convicted of unauthorized entry of a noncommercial building, disorderly conduct, and grand theft. In 2014, he was convicted of assault with a deadly weapon and making criminal threats, for which he again served two years in prison. After his release, he was convicted of three separate offenses in 2016. In 2017, he received three battery convictions. In January 2018, he committed the present offense, where he chased his father with a box cutter to a nearby liquor store and cornered him in one of the aisles. In his most recent offense, Williams not only demonstrated he was willing to use force as he had in previous instances, but he had escalated to the use of a deadly weapon and giving chase to a fleeing victim. There is no evidence in the

record demonstrating Williams made any effort to reform his behavior.

Given Williams's history of violent crime and failure to reform, the trial court did not abuse its discretion to deny Williams's petition for mental health diversion. (See *People v. Hall* (2016) 247 Cal.App.4th 1255, 1265–1266 [trial court did not abuse its discretion to deny a petition for resentencing under Proposition 47 when it found defendant would pose an unreasonable risk of danger to public safety because he engaged in serious criminal behavior that became increasingly violent and made no serious efforts at reform].)

Williams ignores the conflicting evidence of mental disorder in his record and the finding that his assault against his father was motivated by personal animus. He instead asserts his criminal history does not demonstrate a likelihood he will commit a super strike as listed in section 667, subdivision (e)(2)(C)(iv). He contends his criminal history merely shows "aggressive behavior, not murderous tendencies." The evidence is to the contrary, as discussed above.

## II. The Domestic Violence Fine is Stricken

The trial court imposed a fine under section 1203.097, subdivision (a)(5), which provides for a minimum fine of $500 "[i]f a person is granted probation for a [domestic violence] crime . . . ." The parties agree the fine was improperly imposed since Williams was not granted probation but sentenced to state prison. The fine should therefore be stricken. (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1520.)

9

## DISPOSITION

The $500 fine imposed under section 1203.097, subdivision (a)(5)(A) is stricken.  The trial court is directed to prepare a new abstract of judgment and forward it to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


BIGELOW, P. J.

WE CONCUR:


GRIMES, J.


STRATTON, J.