Filed 6/1/21  P. v. Martin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Modoc)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOEL DOUGLAS MARTIN,<br><br>Defendant and Appellant. | C089235<br><br>(Super. Ct. No. F18074) |

A jury found defendant Joel Douglas Martin guilty of numerous crimes including three counts of inflicting corporal injury on a spouse (Pen. Code, § 273.5, subd. (a))[1] and making criminal threats (§ 422, subd. (a)).  The trial court subsequently found true a prior strike allegation, as well as two prior prison term allegations, and denied defendant's petition for mental health diversion.  The trial court sentenced defendant to an aggregate term of eight years in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

On appeal, defendant contends the three convictions for inflicting corporal injury on a spouse should be consolidated into a single conviction. We disagree. Defendant further contends the trial court erred in denying his petition for mental health diversion. Pursuant to the recent Supreme Court decision, *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), we will conditionally reverse the judgment and remand the matter to the trial court for an eligibility determination under section 1001.36

## I.  BACKGROUND

On February 1, 2018, defendant was angry with his wife, S.M. He accused her of cheating on him. He punched S.M. in the chest and repeatedly punched her in the face. Defendant also "banged" S.M.'s head against the windows of their home and choked her until she was unconscious. Defendant dragged S.M. outside and threw her out of their home, causing her to fall on the front porch. Then he locked her outside along with her two minor children.

S.M.'s 10-year-old daughter saw her mom's lip was "fat" and "bleeding." She also saw "hand marks" on S.M.'s neck and a bruise on her right arm. A neighborhood child saw the assault and called to his parents; his dad called the police. That child later testified to seeing defendant use a chokehold on S.M. that night, holding her with his left hand while repeatedly punching her with his right. His dad would later testify to witnessing defendant and S.M. argue before and seeing defendant lock S.M. and the children out of the home. He had also seen S.M. previously with a black eye and bruises on her arm.

When Police Officer Ken Barnes arrived, he saw S.M.'s mouth was swollen, she was crying, and appeared to be shaken. There was blood inside her mouth and dried blood on her lips. Officer Barnes saw redness and bruising on the left side of S.M.'s neck, and a bruise on each of S.M.'s arms. S.M. told Officer Barnes there was a painful lump on the back of her head, which she said defendant caused when he slammed her head into a table. Several days later, when Police Sergeant Russell Turner interviewed

S.M, he saw bruises on each of S.M.'s arms, a small cut on her lower lip, two scratches on the outside of her left ankle, and bruising on the left side of her neck.

On March 29, 2018, the People charged defendant with multiple crimes including two counts of domestic violence resulting in injury, occurring on or about February 1, 2018, and another count of domestic violence resulting in injury, occurring on or about January 30, 2018. Defendant pled not guilty and on September 26, 2018, jury trial began.

Following the admission of evidence and in closing, the People identified for the jury four distinct injuries on S.M., from which the jury could find defendant guilty on three counts of domestic violence resulting in injury: the lump on the back of S.M.'s head, S.M.'s fat and bloody lip, the bruises on her arms, and the red marks on her neck. The jury would have to "pick which one to attribute to each count," and they were given a unanimity instruction.

On September 28, 2018, the jury found defendant guilty as charged. Two months later, the trial court found true the enhancement allegations and defendant petitioned the trial court for pretrial diversion pursuant to section 1001.36. The trial court found defendant had "made a prima facie showing that in fact he has a diagnosis that—a recent diagnosis of a qualifying mental health condition." The court, however, did not believe defendant was entitled to *pretrial* diversion *after* a jury trial. The court also was not certain the person who diagnosed defendant was a licensed psychiatrist, as required by section 1001.36. The trial court nevertheless deferred ruling on the issue.

At a subsequent hearing, the trial court ruled section 1001.36 diversion was limited to petitions filed before trial. Defendant's petition, coming after the jury reached its verdict, was too late. The court also found defendant was "unamenable to treatment by means of mental health diversion," and on those bases denied his petition.

## II. DISCUSSION

### A.    *Multiple Convictions*

Defendant contends his multiple convictions for inflicting corporal injury on a spouse should be consolidated into a single conviction.  We disagree.

"An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts." (§ 954.)  Further, "the defendant may be convicted of any number of the offenses charged." (*Ibid*.)  Multiple convictions are allowed for crimes that do not monetize and aggregate harm or damage; "a defendant may be convicted of multiple crimes—even if the crimes are part of the same impulse, intention or plan—as long as each conviction reflects a completed criminal act." (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1518.)

Thus, "a defendant [can] properly be charged with and convicted of multiple counts of spousal abuse based on acts occurring during a single event where the victim suffered multiple injuries caused by distinct applications of force, because the crime is complete upon the willful and direct application of physical force upon the victim resulting in injury." (*People v. Kopp* (2019) 38 Cal.App.5th 47, 62-63, citing *People v. Johnson* (2007) 150 Cal.App.4th 1467, 1474-1477.)

Here, defendant was charged with, and convicted on, three counts of domestic violence resulting in injury to his wife.  At trial, the People presented evidence of four separate injuries sustained by S.M. as a result of defendant's abuse.  Each of these injuries demonstrated a completed act of domestic violence resulting in injury because they were caused by a direct application of physical force upon S.M. by defendant.  (See *People v. Johnson, supra,* 150 Cal.App.4th at pp. 1474-1477.)  As such, each can be charged as a separate offense and defendant can be convicted of each offense.  (*Ibid.*)

Defendant's argument on appeal is that the decision in *People v. Johnson* is flawed and the crime of domestic violence resulting in injury is a continuing crime, which can only be charged as a single offense no matter how many injuries result. We are not persuaded. Accordingly, we find no error.

B.    *Section 1001.36*

Defendant contends the trial court erred by denying as untimely his request for mental health diversion under section 1001.36. The People concede defendant is entitled to a conditional reversal of judgment and remand to the trial court for a determination of defendant's eligibility for mental health diversion under section 1001.36.

Effective June 27, 2018, section 1001.36 authorizes pretrial diversion in lieu of criminal prosecution for defendants with qualifying mental disorders, "including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder." (§ 1001.36, subd. (b)(1)(A).) " '[P]retrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).)

A trial court may grant pretrial diversion under section 1001.36 if it finds: (1) the defendant suffers from an identified mental disorder; (2) the mental disorder was a significant factor in the commission of the charged offense; (3) the defendant's symptoms will respond to treatment; (4) the defendant consents to diversion and waives his or her speedy trial rights; (5) the defendant agrees to comply with the treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b).)

If the trial court grants diversion, the defendant will undergo mental health treatment by an approved mental health program that will provide regular reports of the defendant's progress. Criminal proceedings may be diverted for "no longer than two years." (§ 1001.36, subd. (c)(1)(B), (c)(2), (c)(3).) If the defendant performs

satisfactorily in diversion, "the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion" and "the arrest upon which the diversion was based shall be deemed never to have occurred." (§ 1001.36, subd. (e).) Under certain circumstances, if the defendant commits additional crimes or performs unsatisfactorily in diversion, the court may reinstate criminal proceedings. (§ 1001.36, subd. (d).)

Here, the trial court denied defendant's petition as untimely, finding mental health diversion was not available post verdict. In a recent decision by this court, we concluded section 1001.36 allows a defendant to "ask the trial court for mental health diversion until sentencing and entry of judgment." (*People v. Curry* (2021) 62 Cal.App.5th 314, 325.) Thus, asking for mental health diversion following a jury's verdict, but before sentencing and entry of judgment, is not an untimely request. (*Ibid.*)

The court also indicated it would not grant the petition for diversion even if the petition were filed prior to trial because defendant was "not amenable to treatment." Defendant contends, and respondent agrees, the trial court may not have had sufficient information to determine defendant's eligibility for mental health diversion at the time it reached that conclusion. We agree.

On this record, we accept the People's concession and will "conditionally reverse the judgment with directions for the trial court to consider defendant's eligibility for mental health diversion under section 1001.36." (*People v. Curry, supra,* 62 Cal.App.5th at p. 327.) We express no opinion on whether defendant will be able to demonstrate eligibility for mental health diversion under section 1001.36, or whether the trial court should exercise its discretion to grant diversion if it finds defendant eligible.

### III. DISPOSITION

The judgment is conditionally reversed and the matter remanded to the trial court for an eligibility determination under section 1001.36. " 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger

6

to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.' " (*Frahs*, *supra*, 9 Cal.5th at p. 641.)

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

HOCH, J.