Filed 6/2/23  P. v. Young CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LAZHAUN YOUNG,<br><br>     Defendant and Appellant. | A165891<br><br>(Contra Costa County<br>Super. Ct. Nos. 04002007656;<br>01001960129) |

Defendant Lazhaun Young appeals two orders finding her incompetent to stand trial, suspending criminal proceedings, and committing her to a state hospital or treatment facility. (Pen. Code,[1] §§ 1367 & 1370.) The trial court issued the orders after reviewing reports from two psychologists who reached conflicting conclusions regarding defendant's competency. We review for substantial evidence the court's decision to rely on the report finding defendant incompetent to stand trial. Because we conclude that the report amounts to substantial evidence supporting the court's finding, we affirm.

---

[1] All statutory references are to the Penal Code.

1

## Factual and Procedural History[2]

Defendant was charged in December 2020 with two felonies, with allegations to support two sentencing enhancements.[3]

In February 2021 the court declared a doubt as to defendant's competence (§ 1369, subd. (a)), suspended criminal proceedings, and appointed Dr. Melissa Johnson, Psy.D., pursuant to section 1368 to evaluate defendant's competence to stand trial. In March 2021, the court relied on Johnson's report to find that defendant was then unable to understand the proceedings against her or assist counsel in preparing a defense. It found defendant incompetent to stand trial and ordered her committed to the Department of State Hospitals (DSH). Defendant did not appeal this order.

In May 2021, defendant attacked a deputy, and the district attorney filed a second case charging her with two misdemeanors.[4]

In October 2021, the court found defendant competent to stand trial and reinstated criminal proceedings, but in April 2022, at defense counsel's suggestion, the court declared a renewed doubt as to competency, suspended criminal proceedings again, and appointed both Johnson and Dr. Alexis Smith, Psy.D., to evaluate defendant. Johnson in her second report found defendant competent to stand trial, but Smith found her incompetent. (We summarize their reports below.)

---

[2] The facts of the alleged crimes are irrelevant to the issues on appeal.

[3] The felonies are attempted murder (§§ 664, 187, subd. (a)) and carjacking (§ 215, subd. (a)); the enhancements are for inflicting great bodily injury (§ 12022.7, subd. (a)) and personally using a dangerous weapon (§ 12022, subd. (b)(1)).

[4] The charges are battering a peace officer (§ 243, subd. (b)) and resisting, obstructing, or delaying a peace officer (§ 148, subd. (a)(1)).

In May 2022, after the parties stipulated to submit the matter on the experts' competency reports, the court found defendant incompetent to stand trial. Its order stated that it "finds by a preponderance of the evidence that the defendant is presently unable to understand the nature and purpose of the proceedings taken against [her] and is unable to assist and cooperate with counsel in presenting a defense." The court again ordered defendant committed to DSH.

Defendant timely appealed as to each case.

**Discussion**

A defendant cannot be "tried or adjudged to punishment" while "mentally incompetent," which for this purpose means that, "as a result of a mental health disorder . . ., the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) "To be competent to stand trial, [a] defendant must have ' " 'sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding' and 'a rational as well as factual understanding of the proceedings against [them].' " ' " (*People v. Ramos* (2004) 34 Cal.4th 494, 507 (*Ramos*).)

A judge who doubts a defendant's mental competence must suspend criminal proceedings and institute proceedings to determine competence. (§§ 1368, subd. (a), 1368.1.) The defendant is presumed competent. (§ 1369, subd. (f).) If, as here, the defendant does not claim incompetence, the judge must appoint two psychologists or psychiatrists (§ 1369, subd. (a)(1)) to evaluate, inter alia, "the nature of the defendant's mental disorder" and how it affects their ability "to understand the nature of the criminal proceedings" and "to assist counsel in the conduct of a defense in a rational manner" (*id.*, subd. (a)(2)(A)). Insanity in a general sense does not dictate a defendant's

3

competence to stand trial, which depends on their ability to understand and aid counsel in the proceedings. (See, e.g., *Ramos*, *supra*, 34 Cal.4th at pp. 507–508; *People v. Laudermilk* (1967) 67 Cal.2d 272, 285.)[5] We review competency determinations for "support by substantial evidence in the record—that is, for evidence that is reasonable, credible, and of solid value." (*People v. Jackson* (2018) 22 Cal.App.5th 374, 392 (*Jackson*).)

**Smith's Report Provides Substantial Evidence of Defendant's Incompetence**

The court relied on Smith's report describing a 90-minute interview of defendant on May 12, 2022. Smith noted that she had reviewed the operative pleadings, defendant's medical records, and a communication from defense counsel. She summarized the latter as follows: "[Defendant's] current and prior attorneys had concerns about her competency to stand trial because of her confusion, scattered thoughts, and sentences that did not make sense. Despite the attorneys' having explained the potential consequences if she were convicted, she had not been able to explain in her own words a serious or violent felony or to name the maximum time she was facing. She had not understood the plea offer. She expressed alternatingly wanting to go to trial and wanting to take any plea deal that got her out of jail, but her reasoning made no reference to the time faced if she were to lose at trial. She had also requested to negotiate on her own behalf with the district attorney."

With that background, Smith described her interview of defendant. When Smith explained the purpose of the interview and asked defendant if she understood, she said she did, but her responses suggested otherwise.

---

[5] The opinions the parties cite on this point, including those cited in text, involve appeals from decisions whether to initiate competency proceedings, not from orders determining competency. Neither party suggests any difference between the two contexts as to the types of facts and evidence relevant to the ultimate issue of competence.

Smith described defendant as tired and as complaining of, and exhibiting, difficulty in concentrating. Defendant reported several symptoms consistent with depression, including poor concentration, low motivation, and feelings of hopelessness. She "spoke in a rambling manner, jumping from topic to topic without warning, and perseverating on memories of sexual abuse and upsetting interactions," and often answering questions "off-topic." While she "could sometimes be redirected, . . . the redirection lasted only briefly." She exhibited intense and rapidly changing emotions, often lost track of what she was trying to say and lapsed into lengthy silences or loud crying, and described aspects of a "grandiose delusion," including spiritual beliefs and hallucinations—all of which, in conjunction with the poor articulation of her speech, made it "exceedingly difficult to understand what she was trying to communicate."

Smith noted defendant's current use of an antidepressant and of estradiol to treat gender dysphoria[6], and her recent use of other drugs that had been discontinued for poor compliance. Defendant had been diagnosed initially with gender dysphoria and later with posttraumatic stress disorder, cannabis-use disorder, and psychotic symptoms. Smith found her symptoms to include "a disorganized thought process, disorganized speech, odd behavior, poor concentration, auditory hallucinations, grandiose delusions, and paranoid ideation" while noting that it was "difficult to assess her . . . symptoms by direct questioning as she veered off-topic multiple times, perseverat[ed] on recounting sexual experiences," and was "floridly psychotic."

Defendant's difficulties in communicating impaired her ability to discuss her legal situation: "While discussing her criminal charges, she was

_____

[6] Defendant, assigned male at birth, identifies as transgender female.

unable to stay focused and interjected statements about the [B]ible, being a high priestess, and her fears about people who were trying to harm her." While she was able to identify with full or partial accuracy several aspects of her situation and of the legal process—such as the charges against her; the number of strikes; the fact that a plea of "not guilty" would lead to a trial involving witness testimony, a judge, a jury, and a prosecutor; the fact that a judge would decide any sentence; and the basic effects of a "not guilty by reason of insanity" (NGI) plea—her answers were "rambling and included interjections" as set forth above. She "spoke in a pressured manner" that made it hard to interrupt her to request more concise answers, and her "persistent veering off-topic made efforts to ask clarifying questions fruitless." She could not remain focused and "wandered off-topic even after redirection multiple times." Smith found her "unable to give clear answers demonstrating an understanding of the trial process," noting that she incorrectly reported that she had "accepted a two-year deal with NGI" that would "not be on my record anymore" and did not understand what plea she would have to make on accepting a deal.

Smith did not believe defendant's inability to communicate was for lack of trying: "She had a cooperative attitude. She seemed to try to be forthcoming, but her thinking and communication were so confused that even after asking multiple clarifying questions, it was quite difficult to follow what she was saying. . . . She was unable to engage in a normal back-and-forth conversation because she often gave answers that were excessively long with copious amounts of details unrelated to the question." A test to assess the validity of mental health symptoms revealed "no indication that she was exaggerating or feigning symptoms of mental illness."

Smith's conclusions as to defendant's ability to understand and communicate effectively with counsel about her defense warrant quotation at length: "On the whole, she had clinically concerning deficits in competence abilities. She lacked an adequate factual understanding of the trial process and the potential consequences of being found guilty of the charges she was facing. She could not maintain focus enough to give a rational explanation when asked questions about her legal situation. Her answers were riddled with delusion, overly long, and tangential. This affected her ability to communicate with counsel effectively. These deficits were due to psychotic symptoms, namely, disorganized thinking, disorganized communication, grandiose and paranoid delusions, and poor concentration. She also had periods in which she shut down and stopped responding altogether. . . . These symptoms would make it difficult to learn and retain new information explained to her by her attorneys. They would also impair her ability to pay attention at a trial and provide relevant information to her attorneys to help with a defense strategy. Because of her confused thinking, she cannot reason through legal decisions logically using facts . . . based on reality."

## Defendant's Challenges to Smith's Report Fail

We have no difficulty in concluding that the report of Smith, whose qualifications are unchallenged, constitutes substantial evidence that defendant was incompetent to stand trial. (§ 1367, subd. (a).)

Defendant offers three arguments as to why it does not. She first contends that Smith misapplied the standard for incompetence to stand trial by relying on evidence that she was "insane in a general sense" rather than evidence of inability to understand the proceedings or assist in her defense. Defendant also contends that Johnson's contrary findings (discussed below) were correct, and the court should have relied on them rather than Smith's

findings. Finally, she contends that Smith held her to an unduly strict standard of ability to comprehend the proceedings against her, improperly finding her incompetent based on her "inability to cite chapter and verse about the legal system."

These arguments fail. Smith did not simply recount defendant's general symptoms of mental illness and then assert that she was incompetent to stand trial, in a way that might suggest that Smith based her conclusion on a perception that defendant was insane in a general sense. Rather, Smith explained how specific symptoms of defendant's mental illness—her inability to concentrate, to stay on topic while answering questions, or to process and respond to new information without being derailed by a perseverant focus on past trauma and present delusions—would prevent her from communicating effectively with defense counsel, from following and incorporating into her thinking an understanding of developments at a trial, or from evaluating plea offers in a reality-based way. The report thus tied defendant's symptoms to an impairment of her ability to communicate effectively, which in turn would prevent her from assisting rationally in her defense.

Defendant also suggests that Smith's report does not amount to substantial evidence supporting the order because the court should instead have based its decision on Johnson's report of a 75-minute interview of defendant on May 1 (or 11 days before Smith's interview).[7] Johnson, who also reviewed the pleadings and medical records, but not defense counsel's communication, found defendant's thoughts "clear, logical, and coherent," her "behavioral control" good, and her mood "sufficiently stable." Johnson found that defendant did not satisfy the criteria for a psychotic spectrum disorder,

---

[7] This was Johnson's second interview of defendant, as she conducted the interview in March 2021 that led to the first finding of incompetence and commitment to DSH.

or report recent hallucinations, but added that she "does exhibit characterological traits that may mask, influence, and/or exacerbate psychiatric symptoms when present." Johnson found defendant alert and oriented, her speech normal, and her affect appropriate, with no evidence of "disorganization or speech derailment," "internal preoccupation," or "active psychotic symptoms."

Johnson found defendant's "ability to rationally understand the proceedings against her, and to rationally assist her defense attorney" to be "adequate," noting her "good factual understanding" of the proceedings, her ability to list charges using legal terminology and explain them in her own words, and her grasp of the proceedings' adversarial nature, her counsel's role, and the "legal risks she is facing." Defendant could "rationally consider potential issues related to her case and upcoming trial process," showed "good reasoning for decisions about plea bargaining and possible testimony," and planned to rely on her attorney. Johnson found no evidence of psychotic symptoms impairing defendant's rational understanding, or of self-defeating mood symptoms. She concluded that defendant was competent "to understand the nature of the charges . . . [and] proceedings taken against her, and to fully understand legal strategies and outcomes" and "to assist in a rational manner with counsel in presenting a defense."

While Johnson's report could amount to substantial evidence in support of a finding of competence, defendant cites no authority identifying circumstances in which a trier of fact is compelled to credit one qualified expert's facially reasonable, direct observation–based opinion about a defendant's competence over another qualified expert's contrary, similarly based opinion. Instead, we must defer to the trial court as the trier of fact as long as there is substantial evidence, i.e., evidence that is reasonable,

9

credible, and of solid value, to support the finding. (*Jackson*, *supra*, 22 Cal.App.5th at p. 392.) In *People v. Kirvin* (2014) 231 Cal.App.4th 1507, two appointed experts disagreed as to whether the defendant was competent, the trial court found him competent, and the Second District held that the conflicting expert's opinion was "not controlling." (*Id.* at p. 1514.) The court did not weigh or compare the two experts' opinions, but simply noted that one had found the defendant competent, observed that "a single witness may establish any fact" (*ibid.*, citing Evid. Code, § 411), and explained that it is not the role of an appellate court " 'to redetermine the credibility of experts or to reweigh the relative strength of their conclusions' " (*id.* at p. 1514). The same principles apply here.

Because Smith's opinion is reasonable, credible, and of solid value, Johnson's contrary opinion cannot prevent it from qualifying as substantial evidence. (See *People v. Kirvin, supra*, 231 Cal.App.4th at p. 1514.) "If more than one rational inference can be deduced from the facts, we may not replace the trial court's conclusions with our own." (*Sieg v. Fogt* (2020) 55 Cal.App.5th 77, 89.)

Defendant's final argument is that Smith held her to an unduly strict standard of technical legal knowledge, faulting her for not grasping some details of the criminal process—for example, the distinct respective roles of prosecutor, judge, and jury—while ignoring several demonstrated points of significant understanding. She cites *People v. Koontz* (2002) 27 Cal.4th 1041, 1068 (*Koontz*), for the proposition that technical legal knowledge is irrelevant to whether a defendant is "unable to understand the nature of the criminal proceedings" (§ 1367, subd. (a)).

This argument cannot support reversal for the simple reason that a defendant is incompetent to stand trial if she is "unable to understand the

10

nature of the criminal proceedings *or* to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a), italics added.) The court found defendant both "unable to understand the nature and purpose of the proceedings taken against [her] *and* . . . unable to assist and cooperate with counsel in presenting a defense" (italics added) based on findings to each effect in Smith's report. Defendant's technical-legal-knowledge argument addresses only the first of those alternative bases for the court's order; her arguments about the second basis fail. Accordingly, even were we to agree that Smith applied too stringent a standard of legal knowledge in finding defendant "unable to understand the nature and purpose of the proceedings taken against [her],"[8] Smith's well-founded finding that defendant's difficulties in communicating left her "unable to assist and cooperate with counsel in presenting a defense" still would compel affirmance of the orders at issue. (See *People v. Wycoff* (2021) 12 Cal.5th 58, 84 [psychologist's report constituted substantial evidence supporting a finding of incompetence to

---

[8] Defendant cites *Koontz, supra*, 27 Cal.4th at page 1068 and *People v. Bradford* (1997) 15 Cal.4th 1229, 1364 (*Bradford*) for the proposition that "lack of technical legal knowledge" is irrelevant to competence to stand trial, and the Attorney General, without citing authority, endorses that general proposition (while denying that the court here erroneously required such technical knowledge). Although *Koontz* and *Bradford* do reflect the stated distinction, neither provides a *standard* for drawing the line between basic ability "to understand the nature of the criminal proceedings," which a defendant must possess to be competent to stand trial (§ 1367, subd. (a)), on one hand, and the "technical legal knowledge" that a defendant need not have, on the other. Nor do the parties cite authority discussing how to draw that line. Because the evidence supporting the finding of inability to assist counsel compels affirmance of the challenged orders, we will not undertake to identify and apply a standard for assessing whether an expert has correctly drawn the line between ability to understand the nature of the criminal proceedings and "technical legal knowledge."

stand trial based solely on the defendant's incapability of cooperating with counsel].)

## Disposition

The orders finding defendant incompetent to stand trial and committing her to a state hospital or treatment facility are affirmed.

_____
Fineman, J.*

WE CONCUR:


_____
Streeter, Acting P. J.


_____
Goldman, J.


A165891


_____
    * Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.