Filed 11/19/20  P. v. Roark CA1/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAHESI NIGEL ROARK,<br><br>        Defendant and Appellant. | A151503<br><br>(Solano County<br>Super. Ct. No. VCR222819) |

Defendant Dahesi Nigel Roark was convicted of first degree residential robbery and found to have multiple prior serious or violent felony convictions. Almost a year after trial but before sentencing, defense counsel expressed doubt as to Roark's competence "moving forward," and the trial court ordered two psychological evaluations.  At a subsequent hearing on the matter, defense counsel submitted the issue of competence on the psychologists' reports, and the trial court found Roark competent.  Roark was sentenced to 30 years to life in prison.

Roark appealed, arguing (1) there was insufficient evidence to support the trial court's finding of competence and (2) the court erred in failing to refer him to the regional center for the developmentally disabled (Regional Center) for assessment.  We rejected Roark's arguments and affirmed the judgment on September 27, 2018.  (*People v. Roark* (Sept. 27, 2018, A151503) [nonpub. opn.].)

1

Roark petitioned for rehearing, asserting rehearing was required to address the availability of newly enacted Penal Code[1] section 1001.36, which created a pretrial diversion program for persons with certain mental health disorders.  We denied the petition for rehearing on October 25, 2018.  Roark then petitioned for review in the California Supreme Court, arguing, among other things, that he was entitled to remand to the trial court to seek mental health diversion under section 1001.36.

On January 16, 2019, the Supreme Court granted Roark's petition for review and deferred further action pending its decision in *People v. Frahs*, which was filed on June 18, 2020.  (*People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*).)

On August 19, 2020, the Supreme Court directed us to vacate our prior decision and to reconsider the cause in light of *Frahs*.  Accordingly, we vacate our decision of September 27, 2018, and, upon reconsideration, we conditionally reverse the judgment of conviction and remand to the trial court to determine in the first instance whether Roark is eligible for mental health diversion under section 1001.36.  The Supreme Court's order does not affect any other aspect of our prior decision, and we again reject Roark's claims of error in the competency determination.

## BACKGROUND

In March 2016, a jury found Roark guilty of first degree residential robbery and found true the allegation the residence was inhabited.  In a subsequent court trial, the court found Roark had three prior serious felony convictions within the meaning of section 667, subdivision(a)(1), three prior

---

[1] Further undesignated statutory references are to the Penal Code.

2

serious or violent felony convictions within the meaning of section 667, subdivisions (b)–(i), and had served three prior prison terms (§ 667.5).

On March 6, 2017, the date scheduled for judgment and sentencing, defense counsel filed a *Romero*[2] motion to strike Roark's prior convictions arguing, among other things, that evidence of Roark's developmental disability justified dismissal of his prior "strike" convictions.[3] In a declaration filed in support of the *Romero* motion, neuropsychologist Dr. Howard Friedman stated that he had examined Roark in 2001 and offered his opinion at that time that Roark was developmentally disabled. More recently, Friedman evaluated Roark in July and September 2016 and concluded Roark continued to have a mild intellectual disability. He found Roark "functions equivalent to a 5 year old regarding his language comprehension."[4]

At the court hearing that day, defense counsel also raised a doubt as to Roark's competence. He told the court, "There's another issue, your Honor, based upon my filings and my interaction with Mr. Roark for over several years' period of time, and my review of the case law, I think it's prudent to

---

[2] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

[3] There was a long delay between Roark's conviction and sentencing because Roark was facing a life sentence under the Three-Strikes Law, and defense counsel requested and was granted repeated continuances to give counsel time to prepare a *Romero* motion.

[4] Friedman did not expressly opine that Roark was incompetent to be sentenced, but he wrote in a letter attached to the *Romero* motion, "There are questionable elements of his competency. In particular, he has limitations with any understanding of legal concepts and facts. . . . He is simplistic in his reasoning and how he can apply his limited knowledge base to any rational understanding of the legal situation. [Roark's c]apacity to assist [his] attorney is limited by virtue of his poor intellectual functioning as, again, his thinking is quite simplistic and repetitive."

declare a doubt about his competency moving forward.  I think, based upon his long history of developmental disability, I think we should probably have this thing sent to the Regional Center for evaluation as to whether or not he is or is not developmentally disabled."

The court asked whether Roark had been a client of the Regional Center before.  Defense counsel responded no, but "I reviewed the case law, I think based upon my analysis, knowing what I know, I don't want this thing to come back for a retro grade [sic] competency."

The court stated, "I think I need to do the standard process.  In the event through the standard process, the traditional process we determine that additional steps, as a result of disability are in order, we take those steps.  But if he's never been a Regional Center client, I'm not going to do that at this point.  Can we stipulate to one doctor or do you want two?"  Defense counsel asked for two evaluators.

The court suspending criminal proceedings and appointed Drs. O'Meara and Nakagawa to evaluate Roark.

Both court-appointed psychologists interviewed Roark and concluded he was competent.  After the psychologists submitted their reports, at a hearing on April 6, 2017, defense counsel and the prosecutor submitted on the reports.  Defense counsel also said, "I reviewed both Dr. O'Meara and the other doctor's report this morning and it appears he's competent."  Relying on the doctors' reports, the trial court reinstated criminal proceedings and eventually sentenced Roark.

## DISCUSSION

A.    *Sufficiency of the Evidence*

"A defendant who is mentally incompetent cannot be tried or adjudged to punishment.  (§ 1367, subd. (a); *Pate v. Robinson* (1966) 383 U.S. 375, 378.)

4

A defendant is mentally incompetent to stand trial if, as a result of mental disorder or developmental disability, the defendant is 'unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (§ 1367, subd. (a).) The defendant has the burden of proving incompetency by a preponderance of the evidence. (§ 1369, subd. (f); *People v. Medina* (1990) 51 Cal.3d 870, 881–886." (*People v. Marshall* (1997) 15 Cal.4th 1, 31.)

Roark contends there was no substantial evidence to support the court's finding that he was competent. We review the trial court's finding "for support by substantial evidence in the record—that is, for evidence that is reasonable, credible, and of solid value." (*People v. Jackson* (2018) 22 Cal.App.5th 374, 392.)

Here, two psychologists evaluated Roark in person and submitted reports to the court concluding he was competent. Dr. Janice Nakagawa interviewed Roark at the county jail on March 29, 2017. He was then 36 years old. Roark reported that he was in special education classes from seventh grade until he left school in tenth grade " 'because of drugs.' " He stated he " 'was on SSI since [he] was a kid' " because " 'they said [he] was mentally retarded . . . .' " Roark said he was designated "DD1" in jail, which referred to the presence of developmental delays or disability. Nakagawa found "[c]ognitively, [Roark's] fund of information was limited. . . . Verbal abstraction abilities (his understanding of how two items are alike) were grossly intact but he tended to be simplistic and concrete in thinking . . . . Overall, intellectual functioning was estimated to be in the borderline range."

Nakagawa gave her opinion that Roark was competent. She found, "with respect to his understanding of various aspects of criminal proceedings, it was evident that Mr. Roark did not have any difficulties. He was able to

5

identify various pleas such as guilty, not guilty, as well as roles and functions of courtroom officials. He was also able to demonstrate understanding of his rights and responsibilities as a defendant." By his own admission, Roark knew he had been found guilty of robbery by a jury and a life sentence was possible. (Nakagawa noted Roark said, " 'Maybe I'm looking at 3 strikes—I don't know—I'm confused.' ") She wrote, "Despite his voiced confusion, [my] impression was that there was no notable difficulties about his understanding due to any mental health problems. *With respect to competency issues, Mr. Roark certainly is able to understand the nature and purpose of proceedings being taken against him and he can assist counsel in matters pertaining to his case.*" (Italics added.)

Dr. Kathleen O'Meara interviewed Roark at the county jail on March 31, 2017. In preparation for the interview, she reviewed the criminal complaints, his probation presentence report, and his jail medical/psychiatric chart. She noted that Roark's reading skills were poor and "he gets help from others when he needs to comprehend written material." She also noted that he served 11 years in prison for a prior robbery "during which time he was identified as suffering a mild developmental disability (DD1) and requiring mental health case management." O'Meara wrote that Roark identified the charges against him and that he knew he could serve a lengthy prison term "if convicted." He knew it was "possibly a third strike." Roark also believed his competency "was being questioned because 'I'm developmentally disabled.' "[5]

---

[5] Roark argues O'Meara mistakenly believed his trial was pending when she interviewed him. The record on this point is ambiguous. O'Meara read the probation presentence report before meeting Roark, but she also noted that Roark faced a lengthy prison term "if convicted."

O'Meara gave her opinion that Roark was competent to stand trial. She wrote, "He has an adequate appreciation of the nature and purpose of the proceedings taken against him and he is capable of cooperating rationally with counsel in preparing his defense." O'Meara noted that Roark understood the roles of his attorney, the district attorney, the judge, and witnesses. She continued, "The defendant appears to be of below average intellectual functioning. However, he does understand the nature of the charges against him and that he faces a possible serious penalty involving prison confinement. . . . He appears capable of providing reasonable assistance to his attorney."

Defense counsel was entitled to offer evidence in support of his allegation of mental incompetence and to offer testimony to rebut the court-appointed evaluators, but he chose not to. (§ 1369, subd. (b)–(d).)

"[A] single witness may establish any fact. [Citations.] It is 'not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions.' " (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1514 (*Kirvin*).) The reports of Drs. Nakagawa and O'Meara provide substantial evidence for the trial court's determination that Roark was competent to be sentenced.

For the first time on appeal, Roark challenges both doctors' evaluations based on "absence of any evidence that either O'Meara or Nakagawa was qualified to opine whether [Roark] had an intellectual disability and whether that disability rendered [him] incompetent." These challenges fail because "defendants may not attack the validity of expert reports to which they submit with arguments they did not present to the trial court." (*Kirvin, supra*, 231 Cal.App.4th at p. 1514.) This is because "unlike the adjudication of criminal guilt, which presumes a defendant's innocence and places the

7

burden of proof on the state, [a] defendant is presumed competent." (*People v. Blacksher* (2011) 52 Cal.4th 769, 797 (*Blacksher*).) When the issue of competency is raised, the defendant assumes the burden of proof. (*Ibid.*, citing §§ 1096, 1369, subd. (f).) "Under these circumstances, by failing to object below, [the] defendant deprive[s] the prosecution of the opportunity to rebut any objections with evidence supporting the presumption of competency. (*Ibid.*)

At the hearing on April 6, 2017, defense counsel could have objected to the evaluators' reports on the grounds he raises now. In response, the prosecution could have presented evidence of the psychologists' qualifications and called them as witnesses to opine more specifically on how Roark's developmental or intellectual disability affected his competency. (§ 1369, subd. (c).) But having failed to raise these objections at trial, Roark has forfeited these claims on appeal. (See *Blacksher*, *supra*, 52 Cal.4th at pp. 797–798 [where defendant submitted the question of competency on doctors' reports, he forfeited appellate claim that the trial court erred in relying on allegedly insufficient reports]; *People v. Weaver* (2001) 26 Cal.4th 876, 904 ["To the extent defendant attempts to impugn the validity of the appointed experts' conclusions . . ., the time to raise such a challenge has long since passed. Having submitted the competency determination on the two psychiatric reports, defendant may not now relitigate that question with arguments he did not make below"].)

In short, the two psychologists' reports in the record are sufficient evidence of competence, and Roark has forfeited his challenges to the psychologists' qualifications and assessments.

8

B.    *Failing to Refer Roark to the Regional Center*

Next, Roark argues the trial court erred in refusing to refer him to the Regional Center for evaluation.

Section 1369 governs the conduct of a trial on mental competence. Subdivision (a), of the statute provides in relevant part, "The court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant. . . . The examining psychiatrists or licensed psychologists shall evaluate the nature of the defendant's mental disorder, if any, the defendant's ability or inability to understand the nature of the criminal proceedings or assist counsel in the conduct of a defense in a rational manner as a result of a mental disorder . . . . *If it is suspected the defendant is developmentally disabled, the court shall appoint the director of the regional center for the developmentally disabled* established under Division 4.5 (commencing with Section 4500) of the Welfare and Institutions Code, or the designee of the director, to examine the defendant."  (Italics added.)

Our Supreme Court has recognized that an error in failing to appoint the director of the Regional Center or her designee is not a jurisdictional error that necessarily requires reversal of an ensuing judgment.  (*People v. Leonard* (2007) 40 Cal.4th 1370, 1389.)  In *Leonard*, the defendant Leonard had epilepsy, a developmental disability, and the trial court did not appoint the director of the Regional Center to examine him as required under section 1369 when a doubt was raised as to Leonard's competence.  (*Id.* at p. 1388.) Leonard argued this statutory violation required reversal of his subsequent conviction and death sentence, but the Supreme Court disagreed.  Rather, the court held Leonard's ensuing convictions and sentence "need not be reversed unless the error deprived him of a fair trial to determine his competency."

9

(*Id*. at p. 1390.)  The court concluded the failure to appoint the director of the Regional Center to examine Leonard did not prejudice him because he was evaluated by doctors who were experienced in the field of developmental disabilities.  (*Id*. at p. 1391.)

Here, we see no prejudice resulting from the trial court's denial of the request for a referral to the Regional Center.  The trial court did not foreclose the possibility of referring Roark to the Regional Center at a later date.  To the contrary, the court indicated that if the appointed psychologists' evaluations revealed that such a referral was "in order, we [will] take those steps."  At the April 6, 2017, hearing, defense counsel could have argued the two evaluators' reports were inadequate (or argued that the reports confirmed Roark had a developmental disability that required further evaluation) and renewed his request for a referral to the Regional Center if he believed it was necessary to fairly assess Roark's competence.  But defense counsel chose to submit on the reports instead.  As we have seen, Roark was interviewed and evaluated by two psychologists who were aware of his limited intellectual functioning and prior designation as developmentally disabled and nonetheless concluded he was competent, and defense counsel, after reviewing their reports, agreed "it appears he's competent."  On this record, we cannot say the trial court's initial denial of the request for a referral to the Regional Center deprived Roark of a fair trial to determine his competency.

C.    *Remand Under* Frahs

"In June 2018, the Legislature enacted Penal Code sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders.  (Stats. 2018, ch. 34, § 24.)"  (*Frahs*, *supra*, 9 Cal.5th at p. 624, fn. omitted.)  The statutes apply retroactively;

10

diversion is therefore available to defendants like Roark whose judgments were not final when the statutes took effect. (*Ibid*.)

Subdivision (b) of section 1001.36 specifies six criteria required for a trial court to grant pretrial diversion. The first is "[t]he court is satisfied that the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders [DSM], . . . excluding antisocial personality disorder, borderline personality disorder, and pedophilia." (§ 1001.36, subd. (b)(1)(A).)[6]

Roark first sought the benefit of section 1001.36 in a petition for rehearing filed October 11, 2018. He asserted he suffered from an intellectual disability or intellectual development disorder, either of which is a qualifying mental disorder in the most recent edition of the DSM, and he sought remand to allow the trial court to consider whether to grant diversion.

In opposition to Roark's petition for rehearing, respondent urged that section 1001.36 was not retroactive (a position that has since been rejected in *Frahs*, *supra*, 9 Cal.5th at p. 624.). In addition, he argued that, even assuming the law was retroactive, remand to the trial court would be futile in

---

[6] "As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (Former § 1001.36, subd. (b)(1)-(6).) Section 1001.36 was subsequently amended by Senate Bill No. 215 (2017-2018 Reg. Sess.) (Senate Bill 215) to specify that defendants charged with certain crimes, such as murder and rape, are ineligible for diversion. (§ 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.)" (*Frahs*, *supra*, 9 Cal.5th at pp. 626–627.)

this case because Roark did not meet two of the statutory criteria for diversion. First, respondent claimed, "nothing in the trial evidence suggests that [Roark]'s alleged developmental disability played a significant role in the charged crime."[7] Second, he argued, "there is no reasonable probability that the trial court would find [Roark] 'will not pose an unreasonable risk of danger to public safety' if granted diversion . . . ."[8] Respondent did not dispute that an intellectual disability is a qualifying disorder under section 1001.36, however.

As mentioned, we denied Roark's petition for rehearing, the Supreme Court then granted Roark's petition for review, and the high court has now directed this court to reconsider in light of *Frahs*.

Respondent stands by his position stated in opposition to the petition for rehearing that remand in this case would be futile. In a one-page letter to this court dated September 2, 2020, he reiterates, "there is no reasonable probability that the superior court would deem [Roark] a suitable candidate for pretrial diversion . . . ."

In a letter brief dated October 6, 2020, Roark expands on his position. He relies on *Frahs*, in which our high court held, "a conditional limited

---

[7] This corresponds with the second criterion to qualify for diversion that "[t]he court is satisfied that the defendant's mental disorder was a significant factor in the commission of the charged offense." (§ 1001.36, subd. (b)(1)(B).)

[8] The sixth criterion to qualify for diversion is "[t]he court is satisfied that the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community. The court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (b)(1)(F).)

remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion — the defendant suffers from a qualifying mental disorder. (§ 1001.36, subd. (b)(1)(A).)" (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

Here, the record includes a letter from neuropsychologist Dr. Howard Friedman in which he concluded defendant "continues to present as having a Mild Intellectual Disability" based on testing and observation of defendant conducted on July 26 and September 21, 2016. Intellectual disability is identified as a type of neurodevelopmental disorder in the 5th edition of the DSM. Accordingly, the record affirmatively discloses that Roark "appears to meet at least the first threshold eligibility requirement for mental health diversion" in that he appears to suffer from a qualifying mental disorder. (*Frahs*, *supra*, 9 Cal.5th at p. 640.) It appears, therefore, that "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted" under *Frahs*. (*Ibid*.)

Respondent's arguments against remand do not convince us otherwise. He argues the record does not show Roark's mental disorder played a significant role in the charged crime (the second statutory requirement for diversion). The *Frahs* court, however, rejected the argument that a defendant must demonstrate he meets *all six* threshold eligibility requirements under section 1001.36 to qualify for remand. The court explained, "[I]mposing such a high bar in the posture of proceedings such as these would be unduly onerous and impractical. When, as here, a defendant was tried and convicted before section 1001.36 became effective, the record on appeal is unlikely to include information pertaining to several eligibility factors . . . ." (*Frahs*, *supra*, 9 Cal.5th at p. 638.) "Furthermore, requiring

13

defendants to show they would meet all threshold eligibility requirements before the appellate court may remand the case to the trial court—which decides in the first instance whether a defendant is eligible for diversion— would be inconsistent with any sensible retroactive application of the statute. That, in turn, would run counter to our usual inference that the Legislature intends ameliorative statutes like this one to apply as broadly as possible within the constraints of finality . . . ." (*Ibid.*)  Given our high court's reasoning, we will not hold it against Roark that the record may not show his mental disorder played a significant role in the charged crime.  Roark cannot be expected to have submitted such evidence before the pretrial diversion law was enacted.

Respondent also claims it is not reasonably probable the trial court would find Roark meets the sixth statutory requirement for diversion—that he "will not pose an unreasonable risk of danger to public safety . . . if treated in the community." (§ 1001.36, subd. (b)(1)(F).)  The *Frahs* court specifically did "not address the question of whether an appellate court may . . . decline a defendant's remand request when the record *clearly indicates* the trial court would have found the defendant 'pose[s] an unreasonable risk of danger to public safety' ([§ 1001.36], subd. (b)(1)(F)) and is therefore ineligible for diversion." (9 Cal.5th at p. 640, italics added.)  Although the trial court denied the *Romero* motion, describing the charged crime as "an extraordinarily frightening thing where clearly the threat of violence was present," respondent has not pointed to anything in the record that clearly indicates the trial court would have found Roark poses an unreasonable risk of danger to the community if treated in the community.  Roark points out that, for a defendant to qualify for diversion, a qualified mental health expert must opine that "the defendant's symptoms of the mental disorder motivating

14

the criminal behavior would respond to mental health treatment" and the defendant must consent to diversion and agree to comply with treatment. (§ 1001.36, subd. (b)(1)(C), (D), and (F).) Roark argues it is not possible for this court to say how the trial court would assess risk of danger to the public *if* treatment were endorsed by a mental health professional and agreed to by him. And, in any event, we have read the transcript of the sentencing hearing, and we cannot say it clearly indicates the trial court would not grant diversion if given the opportunity to exercise its discretion, although that does not appear likely given some of its comments.[9]

## DISPOSITION

The judgment is conditionally reversed, and the matter is remanded to the trial court with directions to conduct a mental health diversion eligibility hearing under section 1001.36. We express no opinion as to whether defendant will be able to show eligibility or whether the trial court should exercise its discretion to grant diversion if defendant makes the required showing. We remand with the instructions set forth in *Frahs*: " 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an

---

[9] The court said, in denying the *Romero* motion (which was based on developmental disability and drug abuse as mitigating factors), "[T]here's something to be said for Mr. Roark being proof of the failure of our systems because all that diagnosis [of developmental disability since 2001], those . . . conditions were all known before he was sent to the California Department of Corrections that did absolutely nothing to protect society by empowering him with any skills, by applying techniques that perhaps would have increased his chances to have success upon his release. So, I think there's a lot of things wrong with a lot of things we do. But the one thing I don't—I think the Court has discretion to find circumstances of developmental disability that it ought to exercise its di[sc]rection. This is not one of those cases. The fact that the offense occurred so briefly after he was released, the violence involved in this particular offense, kind of sad all around. But I'm not going to exercise my discretion and strike any of the strikes."

15

unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion.  If [defendant] successfully completes diversion, then the court shall dismiss the charges.  However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then his convictions and sentence shall be reinstated.' " (*Frahs*, *supra*, 9 Cal.5th at p. 641.)

 

 

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Richman, J.

A151503, *People v. Roark*

17