Filed 10/15/24  P. v. Arriola CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EDUARDO ARRIOLA,<br><br>    Defendant and Appellant. | D080780<br><br><br><br>(Super. Ct. No. SCN388950)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on September 17, 2024, be modified as follows:

1.     On page 7, after the second sentence of the first full paragraph (ending, "and was uncooperative"), add as footnote 3 the following footnote, which will require the renumbering of all subsequent footnotes:

> During her closing argument, Arriola's counsel described similar interactions with Arriola.  When the prosecution objected, the trial court stated it considered defense counsel's statements as argument, not evidence, and Arriola did not challenge that ruling.  We therefore do not consider defense counsel's statements as evidence even though they could have been considered "as tantamount to sworn testimony."  (*People v. Laudermilk* (1967) 67 Cal.2d

272, 286.) Even if these statements were deemed evidence, it would not change the outcome under our substantial evidence review.

2. On page 8, delete the first full paragraph of subsection "*b. Discussion*" (beginning, "Arriola claims the trial court . . . .") , and replace with the following paragraphs:

Arriola claims the trial court erred because it failed to state its findings on the record as required by California Rules of Court, rule 4.130. He also asserts Dr. Badre's opinion held little evidentiary value when weighed against Arriola's medical records, Dr. DeFrancesco's testimony, and Ms. Marquez's statements. According to Arriola, this evidence established that he could not assist in his defense and was, therefore, incompetent.

When competency is determined at a bench trial, "the court's findings must be made in writing or placed orally in the record." (Cal. Rules of Court, rule 4.130(e)(4)(B).) Here, the trial court discussed the evidence it considered, recited the applicable law, noted the dispute was focused on whether Arriola's mental illness precluded him from assisting in his defense, found that Arriola failed to carry his burden on that issue, and explicitly stated Arriola was competent to stand trial. We find this a sufficient statement of the court's findings. (See, e.g., *People v. Marks* (1988) 45 Cal.3d 1335, 1343 [stating "that no 'magic words' are required" for competency finding, the court should at a minimum expressly state its determination, and it would be helpful if the court identified the evidence considered and its reasoning].)

3. On page 11, after the second sentence of the first full paragraph (ending, "disagreed with his findings"), insert the sentence: Acknowledging Arriola had the burden of proof, defense counsel stated she had no evidence to present and that she "underst[ood] that the Court has the authority to reinstate criminal proceedings."

4.     On page 11, replace the fifth sentence of the second full paragraph (beginning, "He did not file any . . . ."), with:  He did not file any briefing for either hearing, at the third hearing he made no argument, and at the fourth hearing his counsel merely stated she disagreed with Dr. Carroll's findings without specifying any flaws in his conclusions and acknowledging that Arriola had not met his burden.

There is no change in judgment.

The petition for rehearing is denied.


DATO, Acting P. J.

Copies to:  All parties

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D080780 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN388950) |
| EDUARDO ARRIOLA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kelly C. Mok, Judge.  Affirmed in part and remanded in part.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Kathryn A. Kirschbaum and Collette C. Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Eduardo Arriola appeals his first degree murder conviction, claiming he lacked competence to stand trial due to his schizophrenia diagnosis.  Arriola

also argues substantial evidence does not support the jury's true finding on the lying-in-wait special circumstance.  Finally, Arriola asserts the trial court abused its discretion when it declined to dismiss the firearm enhancement attached to his conviction because his life without parole sentence prevents him from endangering the public.  We find substantial evidence supported the trial court's competency determinations and the jury's finding on the lying-in-wait special circumstance.  However, the trial court applied the wrong standard when declining to dismiss the firearm enhancement.  We therefore affirm the conviction, vacate the sentence, and remand for resentencing.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Arriola and the victim, Devon Rideout, lived in neighboring apartments.  Rideout resided on the ground floor, and Arriola occupied the unit above hers, along with his brother and mother.  Indeed, the stairs outside of Rideout's front door led up to the apartment where Arriola lived.  From Rideout's apartment door and the stairs to Arriola's apartment, a walkway led out between two small patches of lawn to the sidewalk.  Arriola's balcony and bedroom window overlooked this small yard/entry point into the complex and Rideout's apartment.

Every day, at about 4:00 p.m., Rideout walked her dog around the apartment development after returning home from work.  She followed that routine on July 20, 2018, the day Arriola shot and killed her just outside her

apartment.  An autopsy revealed that Rideout suffered five gunshot wounds, some of which had stippling.[1]

Apparently, Arriola left his apartment that afternoon, possibly at 3:00 p.m., telling his visiting sister that he was going to the grocery store. His sister did not see him again until after the shooting, at which point Arriola did not have any groceries.

At about the same time as the shooting, UPS driver Jeremy Mitchell arrived at the complex to deliver packages.  Going to his first delivery, Mr. Mitchell walked past Rideout's apartment but did not see anyone at her front door nor in that area.  He then saw Rideout walking past him as she headed toward her apartment.  Approximately five to seven seconds later, Mr. Mitchell heard two gunshots, followed by a scream and then two more gunshots.  Prior to the shooting, Rideout was the only person Mr. Mitchell saw at the apartment complex.

Following the shooting, Arriola called 911 "to report a trespasser," stating, "[t]here has been used [sic] legal force."  Police officers soon arrived. Arriola admitted to them that he shot Rideout, claiming he "used lethal force because she was trespassing."

Inside Arriola's apartment investigating officers discovered a copy of "California Firearms Laws Summary 2016" in Arriola's bedroom.  The document explains various gun laws, including those regarding self-defense and ejecting a trespasser.  The officers also found the following list of words written on a plastic radiator reservoir under the hood of Arriola's car:  "Pi,

---

[1]     Stippling is an injury caused by a firearm's discharge at close range, generally 9 to 12 inches away.  The injury presents as small skin abrasions, which are caused by partially burned or unburned gun powder fragments striking skin near a projectile entrance wound.

3

Onesimus, Imran, Quran, Recitations, Westlake, Rideout, Bee, R.I.P." From his time in the Marines, Arriola knew a fellow Marine by the name of Jessica Westlake, as well as one whose nickname was Bee. Rideout was also in the Navy, and her job duties included providing medical services to multiple Marine corps units. Officers arrested Arriola.

After the People charged Arriola with Rideout's murder, the court suspended proceedings against him four times to determine if he was competent to stand trial. Each time, consistent with the findings of court-appointed psychiatrists, the trial court found Arriola competent.

On May 19, 2022, a jury found Arriola guilty of first degree murder (Pen. Code,[2] §§ 187, subd. (a), 189, subd. (a)). It also found true that Arriola committed the offense by means of lying in wait (§ 190.2, subd. (a)(15)), and that he personally used a firearm (§ 12022.53, subd. (d)).

At sentencing, Arriola sought dismissal or reduction of the firearm enhancement under section 1385, arguing it would otherwise add a sentence of 25 years to life to the life without parole first degree murder penalty in this case. The trial court found that potential mitigating circumstance inapplicable because the underlying crime already carried a sentence of over 20 years. After independently noting that Arriola's mental illness was another potential mitigating circumstance, the court nonetheless declined to dismiss the enhancement because doing so would endanger public safety. The court then sentenced Arriola to life without the possibility of parole for the murder and lying-in-wait special circumstance, plus 25 years to life for the firearm enhancement. Arriola timely appealed.

---

[2]    All subsequent statutory references are to the Penal Code.

## III. DISCUSSION

Arriola challenges each of the trial court's four competency determinations, claiming they lacked substantial evidence to support them. He also contends substantial evidence did not support the jury's true finding on the lying-in-wait special circumstance. Finally, Arriola argues the trial court abused its discretion when it refused to dismiss the firearm enhancement. Finding no error in the trial court's competency determinations or the jury's special circumstance finding, we affirm the conviction. However, the trial court abused its discretion when considering whether to dismiss the firearm enhancement. We therefore vacate Arriola's sentence and remand for resentencing.

### A. *Competency to Stand Trial*

"A criminal defendant cannot be tried while mentally incompetent." (*Rodriguez v. Superior Court* (2023) 15 Cal.5th 472, 486.) Mental incompetency exits when, "as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).) At a trial to determine competency, the defendant is presumed competent, and the defendant must prove incompetence by a preponderance of the evidence. (§ 1369, subd. (f).)

We will uphold a competency determination when it is supported by substantial evidence— that is, evidence that is " ' "reasonable, credible, and of solid value." ' " (*People v. Turner* (2004) 34 Cal.4th 406, 425.) " '[W]e give due deference to the trier of fact, and therefore view the record in the light most favorable to the verdict.' " (*People v. Mendoza* (2016) 62 Cal.4th 856, 871.) "[I]t is not our function to substitute our judgment for that of the [trier of fact] or to reweigh the evidence." (*Id.* at 883.) As long as there is

5

substantial evidence supporting the determination, we will uphold it even though substantial evidence to the contrary also exists. (*People v. Helzer* (2024) 15 Cal.5th 622, 646.)

### 1. First Competency Determination

On September 13, 2019, the trial court suspended proceedings against Arriola for the first time. This led to a competency evaluation by court-appointed psychiatrist Dr. Nicholas Badre on October 24, 2019. Dr. Badre determined Arriola was competent to stand trial. At a January 6, 2020 hearing, counsel for Arriola submitted on Dr. Badre's report without argument The trial court found Arriola competent and reinstated the proceedings.

On appeal, Arriola argues substantial evidence did not support this first competency finding because Dr. Badre's report was conclusory and inconsistent. The People claim Arriola forfeited any challenge to Dr. Badre's report because he submitted on it without argument. In response, Arriola maintains sufficiency of the evidence claims are never forfeited. We agree with the People.

"[D]efendants may not attack the validity of expert reports to which they submit with arguments they did not present to the trial court." (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1514 (*Kirvin*).) Additionally, the general rule that the sufficiency of the evidence is never forfeited does not apply because "[u]nlike the adjudication of criminal guilt, which presumes a defendant's innocence and places the burden of proof on the state," in a competency proceeding, the "defendant is presumed competent" and "he assumes the burden of proof." (*People v. Blacksher* (2011) 52 Cal.4th 769, 797.) Accordingly, because Arriola submitted on Dr. Badre's report without any argument, Arriola forfeited his objections on appeal.

6

## 2. Second Competency Determination

### a. Background

On October 8, 2020, the court suspended proceedings for a second time, resulting in a bench trial occurring on March 2 and 3, 2021. Clinical forensic psychologist Dr. David DeFrancesco testified on behalf of Arriola. He opined that despite knowing the nature and purpose of the criminal proceedings, as well as his status in the proceedings, Arriola was not competent to stand trial because he was unable to rationally assist with his defense due to his schizophrenia. Unable to personally diagnose Arriola due to his refusal to be interviewed, Dr. DeFrancesco's opinion was based solely on Arriola's records from the military, the Department of Veterans Affairs, and his time in custody after the murder. Those records showed that while in the Marines in 2014, Arriola was held for psychiatric treatment due to bizarre behavior and hyper-religiosity; after his release from treatment he went on a unauthorized absence for over a year; in 2016 a military court found him incompetent to stand trial in court martial proceedings; diagnosed him with schizophrenia, the Marines then discharged Arriola from the military; and since being in custody for the current charges he has resisted medication and continued to exhibit schizophrenia. The court received into evidence Arriola's military and Department of Veterans Affairs records.

Defense investigator Allison Marquez also testified at the hearing. She stated that though she met with Arriola numerous times, she could not discuss with him the case or how to proceed because Arriola exhibited scattered thinking, made irrational statements, and was uncooperative.

The People then called Dr. Badre to testify. He described both his initial evaluation of Arriola as well as a second that occurred on October 26, 2020. He explained that Arriola was uncooperative in these meetings, and

7

the doctor believed Arriola showed deceit by refusing to answer even simple and absurd questions, like whether Rideout was killed by a piano. Although schizophrenics may present as being guarded and nonresponsive, Dr. Badre believed that Arriola's failure to cooperate did not reflect mental illness. Rather, even though Arriola chose not to answer easy questions he still possessed the clarity of mind to say he wanted to go to a mental hospital instead of prison. The doctor also based his opinion on Arriola's ability to change his answers when it suited him. For example, Arriola initially denied knowing the colors of the American flag, but then correctly provided them after Dr. Badre said Arriola's answer sounded suspicious.

Dr. Badre also reviewed Arriola's records from the military, the Department of Veterans Affairs, and his time in custody. Dr. Badre distinguished his evaluations from those that led to the incompetency determinations in 2016. In those, Arriola credibly answered many questions correctly and reported delusions. In contrast, during Dr. Badre's more recent examinations, Arriola did not report any delusions, and his failure to cooperate appeared volitional. Ultimately, Dr. Badre concluded that Arriola was competent to stand trial.

After the matter was submitted to the trial court for ruling, it summarized the evidence it considered. The trial court reviewed the applicable law as stated in a standard jury instruction on competency (CALCRIM No. 3451), finding sufficient evidence that Arriola understood the proceedings and his role in them. The court also found that Arriola failed to carry his burden to overcome the competency presumption because the evidence did not show it more likely than not that Arriola's mental disorder precluded him from assisting in the defense. The court therefore found Arriola competent to stand trial and reinstated criminal proceedings.

*b. Discussion*

Arriola claims the trial court erred because it failed to state its findings on the record as required by California Rules of Court, rule 4.130. He also asserts Dr. Badre's opinion held little evidentiary value when weighed against Arriola's medical records, Dr. DeFrancesco's testimony, and Ms. Marquez's statements. According to Arriola, this evidence established that he could not assist in his defense and was, therefore, incompetent. We find this a sufficient statement of the court's findings. (See, e.g., *People v. Marks* (1988) 45 Cal.3d 1335, 1343 [stating "that no 'magic words' are required" for competency finding, the court should at a minimum expressly state its determination, and it would be helpful if the court identified the evidence considered and its reasoning].)

Turning to his challenges to the evidence, Arriola's reliance on the information favorable to him is misplaced. Dr. Badre found Arriola competent, and " 'the testimony of a single witness, including the testimony of an expert, may be sufficient to constitute substantial evidence.' " (*People v. Wright* (2016) 4 Cal.App.5th 537, 545.) "It is 'not the role of this court to redetermine the credibility of experts or to reweigh the relative strength of their conclusions.' " (*Kirvin, supra*, 231 Cal.App.4th at p. 1514.) We focus on Arriola's challenges to determine if Dr. Badre's opinion meets the threshold for substantial evidence. To prevail, Arriola must show that Dr. Badre based his findings on " 'factors that are "speculative, remote or conjectural," or on "assumptions . . . not supported by the record." ' " (*Wright*, at p. 545.)

Arriola disputes Dr. Badre's opinion because people with schizophrenia can appear guarded and nonresponsive while Dr. Badre relied on that behavior to find deceit. However, both Dr. Badre and Dr. DeFrancesco testified though such behavior could be a symptom of schizophrenia,

9

every person is different, and it could also be evidence of malingering. Dr. DeFrancesco also testified that malingering is best determined by observation. Dr. Badre reached his opinion after interviewing Arriola, during which Arriola selectively answered both simple and absurd questions while never mentioning any delusions. This contrasted with Arriola's prior evaluations where he put in more effort into interacting with the examining mental health professional, disclosing more challenges including his delusions.

Arriola claims that Dr. Badre ignored Arriola's delusional comments and that delusions are not a prerequisite for mental illness. The only delusional comment identified by Arriola is that he did not know if Rideout was killed by a piano, a response Dr. Badre found deceitful. Additionally, Dr. Badre never testified that delusions were required for a finding of incompetence. He merely used the absence of any reported delusions as one component of his analysis.

Finally, Arriola argues Dr. Badre exhibited bias because he prepared a script for the prosecutor and improperly conducted a second evaluation. As a general rule, our role as an appellate court does not permit us to reweigh evidence or reassess a witness's credibility. (*Kirvin*, *supra*, 231 Cal.App.4th at p. 1514.) In any event, Arriola fails to demonstrate that the issues he identifies would preclude a reasonable fact finder from finding that he was competent to stand trial.

In sum, Arriola fails to show that Dr. Badre's opinion was speculative or not supported by the record. Dr. Badre's opinion is therefore substantial evidence in support of the trial court's ruling, and that ruling was adequately stated on the record. We therefore affirm the trial court's second competency determination.

10

3. Third and Fourth Competency Determinations

After proceedings were suspended a third time to assess Arriola's competency, court-appointed psychiatrist Dr. David Naimark authored a report finding Arriola competent. At an October 8, 2021 hearing, Arriola's counsel did not make arguments or present evidence, instead stipulating to Dr. Naimark's report. Consequently, the trial court reinstated criminal proceeding after finding Arriola competent to stand trial.

At the fourth competency hearing, conducted on April 8, 2022, the only evidence before the court was a report from court-appointed psychiatrist Dr. Matthew Carroll, who found Arriola competent to stand trial. Arriola's counsel stipulated to Dr. Carroll's qualifications and the admission of his report, but stated she disagreed with his findings. The trial court found Arriola competent to stand trial.

On appeal, Arriola claims substantial evidence did not support the third and fourth competency determinations. Arriola challenges Dr. Naimark's opinion for being conclusory, not specifying the records reviewed, not examining Arriola, and that Arriola's records showed he was incompetent. Arriola makes similar claims regarding Dr. Carroll's opinion, arguing his report was conclusory and the evaluation was limited. However, Arriola did not raise these claims in the trial court. He did not file any briefing for either hearing, at the third hearing he made no argument, and at the fourth hearing his counsel merely stated she disagreed with Dr. Carroll's findings but without specifying any flaws in his conclusions. We find, therefore, Arriola forfeited these arguments on appeal. (*Kirvin, supra,* 231 Cal.App.4th at p. 1514.)

11

## B. Lying-in-wait Special Circumstance

Arriola argues the jury needed to speculate in order to find the lying-in-wait special circumstance true. Arriola asserts jurors heard no evidence about his location prior to the shooting, so he could have been waiting for Rideout, or encountered her as he returned to his apartment. Arriola also contends the evidence shows Rideout saw him before he fired because she had entry wounds in the front and back of her body, indicating she saw him and attempted to run. He therefore claims there was no basis for the jury to infer that before he approached Rideout, he concealed his presence or intent to shoot her, or that he intended to kill by surprise.

The lying-in-wait special circumstance requires proof of " ' " ' "an intentional murder, committed under circumstances which include (1) a concealment of purpose, (2) a substantial period of watching and waiting for an opportune time to act, and (3) . . . a surprise attack on an unsuspecting victim from a position of advantage." ' " ' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 774.)

"The required concealment need not be physical. It suffices if the defendant's purpose and intent are concealed by his actions or conduct, and the concealment of purpose puts the defendant in a position of advantage, from which the fact finder may infer that lying in wait was part of the defendant's plan to take the victim by surprise." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1140.) "As for the watching and waiting element, the purpose of this requirement 'is to distinguish those cases in which a defendant acts insidiously from those in which he acts out of rash impulse. [Citation.] This period need not continue for any particular length " 'of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation.' " ' " (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1073.)

12

We review the lying-in-wait special circumstance finding using the sufficiency of the evidence standard previously discussed. (*People v. Mataele* (2022) 13 Cal.5th 372, 420–421.) As is pertinent here, " ' " 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.' " ' " (*People v. Cook* (2021) 59 Cal.App.5th 586, 590.) " ' "Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal." ' " (*Ibid.*)

Arriola compares his case to *People v. Nelson* (2016) 1 Cal.5th 513 (*Nelson*).[3] In *Nelson* the defendant "rode his bicycle to the area near the Target parking lot, where he had reason to believe the victims would be waiting to go to work. He concealed his bicycle and came up behind his victims on foot to take them by surprise. He shot the two victims in quick succession. After ensuring his victims were dead by shooting a second time, he retrieved his bicycle and left." (*Nelson*, at p. 551.) The California Supreme Court noted two potential scenarios within these facts, one in which the defendant waited for a time when the victims would be vulnerable to a surprise attack, and one in which he merely attacked them from behind without any distinct period of watching and waiting. (*Ibid.*) Because there

---

[3] We observe that the murder in *Nelson* occurred in 1993, and our Supreme Court's reasoning in that case relied on the 1993 version of the lying-in-wait law. Proposition 18 made a significant change to the lying-in-wait special circumstance, but that modification does not affect our analysis. (See Stats. 1998, ch. 629, § 2, p. 4163, enacted as Prop. 18, approved by voters, Primary Elec. (Mar. 7, 2000) eff. Mar 8, 2000.)

was no evidence that the defendant arrived before the victims or waited in ambush for their arrival, there was no factual basis to infer the surprise attack scenario over the other, so insufficient evidence supported instructing the jury on lying-in-wait. (*Id*. at pp. 549, 551.)

The People distinguish *Nelson*, arguing that Arriola left his apartment at 3:00 p.m., armed himself, and approached Rideout as she walked to her front door while others were out of sight.[4] They also rely on *People v. Harrison* (1963) 59 Cal.2d 622 (*Harrison*) and *People v. Rosoto* (1962) 58 Cal.2d 304 (*Rosoto*), abrogated on another ground in *People v. Green* (1980) 27 Cal.3d 1.

In *Harrison*, the California Supreme Court held, "From the evidence that defendant had armed himself with a butcher knife, that he was not observed on the street prior to the attack, and that he attacked [the victim] immediately upon her emergence from the apartment house, the jury could reasonably conclude that he was waiting for her with the intention of killing or inflicting injury upon her, and that the killing was accomplished by the means of his watching and waiting in concealment." (*Harrison, supra*, 59 Cal.2d at p. 631.)

Similarly, in *Rosoto*, a witness testified that as the victim started up the sidewalk to the front porch of his house, a man ran up from the side of the house and opened fire. (*Rosoto, supra*, 58 Cal.2d at p. 355.) Our Supreme Court determined that the "jury could reasonably have inferred the killer was in hiding and was waiting for the [victim], since no one saw him before the

_____

[4]     The People also argue that *Nelson* is inapplicable because it addressed the element of watching and waiting, while Arriola only challenged the surprise attack element. However, we find under the circumstances that by comparing his case to *Nelson*, Arriola also challenged the existence of watchful waiting.

14

murder, and his approach to [the victim] coincided with the latter's approach to the front porch." (*Ibid*.)

Turning to the facts of this case, we know Arriola was not in his apartment during the hour leading up to the shooting. He purportedly went to the grocery store, but he did not return with any groceries. The evidence also shows that Arriola was not seen in the area of the murder when Mr. Mitchell walked by shortly before. That area was outside Rideout's front door and at the foot of the stairs leading to Arriola's apartment. Finally, the facts suggest that the attacker surprised Rideout: She did not scream until after two shots were fired, and she did not even drop the dog biscuit later found in her hand.

We compare these circumstances to those found in *Nelson*, *Harrison*, and *Rosoto*. As in *Nelson*, here two potential scenarios exist. First, evidence could support finding a chance encounter between Rideout and Arriola because Arriola's location in the hour before the murder is unknown, and the stairs leading to his apartment are just outside Rideout's door, meaning Rideout and Arriola could accidentally encounter each other. However, a second interpretation of the evidence supports Arriola ambushed Rideout. Both Rideout's apparent surprise, and the location of the shooting, demonstrate that an armed Arriola murdered Rideout as she approached her front door.

From these facts a jury could infer waiting and concealment as in *Harrison* and *Rosoto*. And unlike in *Nelson*, there was a factual basis for the jury to infer the surprise attack scenario over one not involving lying in wait. Arriola's purported trip to the grocery store was contradicted by both his lack of groceries and his decision to arm himself. Additionally, the evidence indicated Arriola planned to kill Rideout under the guise of self-defense. Not

15

only was her name found in Arriola's car written on a list that ended in "R.I.P.," but Arriola also studied how one legally ejects a trespasser from property. Further, Arriola immediately reported to 911 operators and responding officers that he used legal, lethal force on a trespasser. To employ such a plan, Arriola would have watched and waited for an opportune time to act, and then consistent with that plan, murdered Rideout during her routine dog walk. These circumstances reasonably justify the jury's determination that the encounter between Arriola and Rideout was not a coincidence, but rather the result of a planned surprise attack.

As for Arriola's reliance on the location of Rideout's entry wounds, we find that claim unpersuasive. The medical examiner testified that one of the five shots entered the left side of Rideout's face and went through her vocal cords, indicating this shot occurred after she screamed. As for the four other shots, one entered slightly to the rear and left side of the head, one entered between the back and side of the right arm, one entered through the abdomen, and one went through the right scapula and second rib. However, the examiner was not able to determine the order in which these four shots occurred. As such, while the shot that entered through Rideout's face was likely one of the later ones, there is no evidence indicating the order of the remaining rounds, so the positioning of Rideout during the shooting is unclear.

Based on the foregoing, sufficient evidence supported the jury's true finding on the lying-in-wait special circumstance.

## C.    *Firearm Enhancement*

Arriola objects to the court's refusal to dismiss the firearm enhancement, pursuant to section 1385, subdivision (c)(2). He claims his mental illness weighed greatly in favor of dismissal, and in finding danger to

16

the public, the trial court failed to consider that he would spend the rest of his life in prison even if the enhancement was dismissed.  We agree.

Certain mitigating circumstances, including when an offense is connected to mental illness, weigh greatly in favor of dismissing an enhancement, unless doing so "would endanger public safety."  (§ 1385, subd. (c)(2) & (c)(2)(D).)  " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Id.*, subd. (c)(2).)  In making this forward-looking determination, "a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence."  (*People v. Gonzalez* (2024) 103 Cal.App.5th 215, 228.)  We review the trial court's ruling on this issue for abuse of discretion, which is established if the trial court applied an incorrect legal standard.  (*Id.* at p. 225.)

While acknowledging Arriola's mental illness, the trial court declined to dismiss the firearm enhancement, stating, "[t]his was a horrific and planned crime that involved great violence.  And the court finds that there is an unreasonable risk that he will commit a new [super] strike if he is released and finds that the dismissal would endanger public safety."  However, the trial court did not appear to consider Arriola's future dangerousness if it dismissed the firearm enhancement given that Arriola would never be released due to his life without parole sentence for the special circumstance.  (See  *People v. Gonzalez, supra* 103 Cal.App.5th at pp. 230–231 [court must consider future as well as current dangerousness to others].)  Consequently,

17

the trial court applied the wrong legal standard and abused its discretion.[5] We therefore vacate Arriola's sentence.


## IV. DISPOSITION

Arriola's conviction is affirmed, but his sentence is vacated. This matter is remanded to the trial court to conduct a resentencing hearing.

In considering dismissal of the firearm enhancement, the trial court shall, among other factors it considers, also include how it assesses Arriola's current and future dangerousness, and the "likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others" in the light of his life without parole sentence. (§ 1385, subd. (c)(2).)


RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

---

[5] This is a rapidly evolving area of law. Indeed, on August 15, 2024, our Supreme Court decided *People v. Walker* (Aug. 15, 2024, S278309) ___ Cal.5th ___ [2024 Cal. LEXIS 4426] [discussing whether giving factors in § 1385, subd. (c)(2) great weight meant there was a rebuttable presumption for dismissing an enhancement.] *Gonzalez* was also decided in 2024, two years after the trial court made its sentencing determination in this matter.